**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | : | Case No. 3:05CR781 |
| Plaintiff, | : | |
| v. | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| John A. Martinez, et al., | : | |
| Defendants. | : | |

This is a criminal case in which pretrial matters have been referred to the undersigned magistrate for initial hearing and determination. Pending before the court is Defendant Ricardo Medrano's motion to suppress the fruits of a search conducted pursuant to a search warrant on December 11, 2002 at 125 Esther Street, Toledo, Ohio (Docket No. 199). The government's response is included in its omnibus response at pages 8 through 15 (Docket No. 267). The magistrate's recommendation as to the pending motion follows.

*BACKGROUND*

A fifty count indictment filed September 8, 2005, charges twenty-one defendants. Defendant Ricardo Medrano is charged in Count I with conspiracy to possess with intent to distribute cocaine, cocaine base (crack), in violation of 21:841(a)(1) and 846; and in Count IV with possession with

intent to distribute cocaine, in violation of 21:841(a)(1).  The indictment sets forth the purpose, object, manner and means by which the goals of the conspiracy were allegedly met and describes two hundred thirty four overt acts in furtherance of the conspiracy.  The indictment includes a forfeiture specification.

In his motion, Defendant Medrano seeks to suppress the fruits of the search conducted on December 11, 2005.

## *DISCUSSION*

In this case, a warrant was issued based on the following facts outlined in the affidavit:

1.  On December 11, 2002, this affiant along with other members of the Toledo Police Interdiction Unit seized 4 kilograms of cocaine and wrappings from a fifth kilogram of cocaine from a local motel.  The subject arrested with the cocaine was Brian Summers.  Brian Summers, during interrogation, stated that he lived at 125 Ester street, in Toledo, Lucas County, Ohio, on the east side of Toledo.  Summers also stated that he had an additional kilogram of cocaine currently at 125 Ester Street that would be present in a safe that he had recently purchased.

2. Brian Summers further stated that a Hispanic male by the street name of "Okie Dokie" was staying at the location, and was in possession of a 9mm semi-auto handgun.  Brian Summers further stated that a large amount of U.S. Currency was present at the location derived from his drug sales.

3.  An investigation into the information found 125 Ester to be a valid address located on the east side of Toledo.

4.  This affiant has been a police officer for 15 years and has been involved in narcotics investigations for over nine years.  This affiant has received training in drug investigations from the United States Drug Enforcement Administration and has also received training in drug interdiction.

This affiant has conducted numerous narcotics investigations that have led to the arrest and conviction of narcotics traffickers (Docket No. 270-2, Exhibit 2).  Finding risk of physical harm to law enforcement officers and others under O.R.C. § 2933.231(B)(1), Judge Bates issued a warrant authorizing a no-knock night search of 125 Ester Street (Docket No. 270-2, Exhibit 1).

*Sufficiency of No-Knock Affidavit*

The critical question is whether the allegations contained in the affidavit were sufficient to show exigent circumstances to justify the no-knock nighttime warrant. *Johnson*, 267 F.3d 498, 500 (6th Cir. 2001).  Here, two potential exigent circumstances exist: (1) the probable destruction of illegal drug evidence; and (2) the presence of a firearm in "Okie Dokie's" possession.

Although destruction of illegal drug evidence may create an exigent circumstance, the government must assert "imminence".  The mere possibility or generalized fear that a party will destroy evidence when faced with a warrant is not sufficient to create an exigency. *U.S. v. Smith*, 386 F.3d 753, 760 (6th Cir. 2004); *Bates*, 84 F.3d at 796 (citing *U.S. v. Radka*, 904 F.2d 357, 362 (6th Cir. 1990); *U.S. v. Becker*, 23 F.3d 1537, 1541 (9th Cir. 1994).  The fact that the warrant is pursuant to a felony drug investigation does not automatically create exigent circumstances to justify a no-knock warrant. *Richards v. Wisconsin*, 117 S. Ct. 1416, 1422 (1997); *Ingram v. City of Columbus*, 185 F.3d 579, 590 (6th Cir. 1999).

The affidavit, herein, contains no assertions that would suggest an imminent threat of destruction of evidence.  Although it might be asserted that destruction in this case would be easier given the relatively small quantity (1 kilogram), that assertion is weakened by the fact that the affidavit itself states the illegal drugs were in a safe (Docket No. 270-2, Exhibit 2).  Even assuming the occupants could unlock the safe, it appears unlikely that the occupants of the searched dwelling

would have enough time to open a safe and dispose of evidence in the time it takes officers to "knock and announce." *See United States v. Spikes*, 158 F.3d 913, 927 (6th Cir. 1998) (considering the time the warrant was executed, potential of gun-fire, and destruction of illegal drug evidence, the Court found that police acted reasonable by waiting 15-20 seconds before entering the residence).

In *Bates*, the Sixth Circuit rejected an argument for exigent circumstances when officers searched a dwelling containing fifteen kilograms of cocaine. *Bates*, 84 F.3d at 796. The Court reasoned that it would be difficult to quickly dispose of fifteen kilograms of cocaine in the time it takes officers to knock and announce. *Id*. The Court also stated that there was no evidence to suggest that the defendants were likely to dispose of the drugs. *Id*. Although the quantity of evidence in this case is different, the same overall issue is present: it would be difficult to quickly dispose of evidence that was in a safe. Also, like *Bates*, there is no evidence contained in the affidavit to suggest that the occupant of the dwelling *would* dispose of the drugs. In addition, it is not even known whether the occupants of the dwelling had the capacity to open the safe where the drugs were stored to dispose of them. A "mere suspicion" that the drugs would be destroyed, by itself, is insufficient to create exigent circumstances. *Bates*, 84 F.3d at 796. Therefore, exigent circumstances do not exist with respect to presence of illegal drugs.

The affidavit also states that an occupant of the dwelling to be searched possessed a 9mm semi-auto handgun (Docket No. 270-2, Exhibit 2). This circuit has made clear, however, that the mere presence of a firearm in a dwelling to be searched is insufficient to create an exigent circumstance justifying a no-knock warrant. *U.S. v. Smith*, 386 F.3d 753, 760 (6th Cir. 2004) (citing *Bates*, 84 F.3d at 795). On the other hand, evidence that the occupant has "a criminal record

reflecting violent tendencies…can be enough to provide law enforcement officers with justification to forego the necessity of knocking and announcing their presence." *Id*. (citing *Bates*, 84 F.3d at 795); *See also U.S. v. Nabors*, 901 F.2d 1351, 1354 (6th Cir. 1990) (finding exigent circumstances where the affidavit alleged that Nabors was "suspected of trafficking in narcotics, was a felon in the possession of an array of firearms, and habitually wore a bullet-proof vest.").

The fact pattern presented in this case is almost exactly like that presented in *Bates* where officers were informed that a firearm was present in an apartment to be searched. The government argued that the presence of a firearm created an exigent circumstance justifying no-knock entry, but the Sixth Circuit soundly rejected the argument. *Bates*, 84 F.3d at 796. Likewise, in *Smith* this Circuit rejected an argument offered to show exigent circumstances when it was known: (1) that weapons were in the dwelling; and (2) that one occupant was a member of an outlaw biker organization with prior drug and weapons convictions. *Smith*, 386 F.3d at 760.

Here, no evidence was presented in the affidavit to suggest that any of the occupants of 125 Ester Street were violent, had a criminal record, had threatened officers, or had a general reputation for violence. The affidavit merely states that a man by the street name of "Okie Dokie" was in the dwelling and possessed a 9mm semi-auto handgun (Docket No. 270-2, Exhibit 2). This assertion is clearly insufficient to create exigent circumstances under *Smith* and *Bates*.

For all the aforementioned reasons, the affidavit used to obtain the search warrant did not contain sufficient functional allegations and reliable information to support a "no-knock" night search.[1]

---

[1] Since probable cause did not exist to issue a no-knock warrant, it would seem self-evident that "urgent necessity" for a night search also did not exist; however, the standard of review for the former inquiry is *de novo*; the later, abuse of discretion. *Bates*, 84 F.3d at 794; *State v. Marko*, 303 N.E. 2d 94, 100 (Ohio App. 10th Dist. 1973). Even assuming that "urgent necessity" did exist, the warrant would still be problematic for its "no-knock" authority

*Good Faith Exception*

Although the warrant may be facially and substantively insufficient, the evidence may nonetheless be used if the evidence was "obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment." *U.S. v. Leon*, 104 S. Ct. 3405, 3413 (1984). The good-faith analysis asks: "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 3421, n. 23. The reasonableness of the officer's reliance upon a search warrant is an objective test and the officer's state of mind is irrelevant. *Id.* at 3414.[2] "[Searches] pursuant to a warrant will rarely require any deep inquiry into reasonableness for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.." *Id.* at 3420. "It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his/her judgment that the form of the warrant is technically sufficient." *Id.* at 3419.

An officer would not act in good faith if the underlying affidavit were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 3421. (citing *Brown* v. *Illinois*, 95 S. Ct. 2254, 2265 (1975) (Powell, J., concurring in part). A warrant, so described, is generally one that contains "wholly conclusory statements, with lack of facts and circumstances from which a magistrate can independently determine probable cause." *U.S. v. Satterwhite*, 980 F.2d 317, 320-21 (5th Cir. 1992); See also *U.S. v. Williams*, 224 F.3d 530, 533 (6th

---

absent exigent circumstances, which have been shown not to exist in this case.

[2]Thus, the officer's fifteen years of experience, herein, would not be relevant that he should have known that his affidavit was insufficient (Docket 270-2, Exhibit 2).

Cir. 2000) ("Thus, a 'bare bones' affidavit is similar to, if not the same as, a conclusory affidavit. It is "one which states 'only the affiant's belief that probable cause existed.'" *U.S. v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993) (quoting *U.S. v. Ciammitti*, 720 F.2d 927, 932 (6th Cir. 1983)).

In the present case the no-knock night season warrant was issued based on an affidavit that alleged drugs and U.S. Currency were in the dwelling and that an occupant possessed a 9mm semi-auto hand gun (Docket No 270-2, Exhibit 2). The good faith inquiry is necessarily limited in the present case because a warrant was issued by a detached judicial officer, which generally entitles the officer to act in furtherance of the warrant in good faith. *Leon*, 104 S. Ct. at 3420. Officers are not to second guess a magistrate's probable cause determination; however, an officer may have, nonetheless, acted in bad faith if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" or states only "the affiant's belief that probable cause existed." *Id*. at 3421 (*citing Brown v. Illinois*, 95 S. Ct. 2254, 2265 (1975) (Powell, J., concurring); *U. S. v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993) (quoting *U.S. v. Ciammitti*, 720 F.2d 927, 932 (6th Cir. 1983)).

The question, then, is whether the affidavit was merely conclusory or so lacking that it would be entirely unreasonable that an objectively reasonable officer should have refrained from executing the warrant. The affidavit does not appear to be conclusory—that is "merely state the affiant's belief that probable cause existed." Instead the affidavit gives a relevant factual basis that establishes probable cause. The information gathered followed a narcotics arrest, where the suspect specifically named the address and identified it as his residence (Docket 270-2, Exhibit 2). The suspect confessed to possessing cocaine at the address given and the address was verified. (*Id*.). Finally, the suspect warned officers that an occupant of the dwelling was in possession of a 9mm semi-auto

7

handgun.  The information was collected on December 11, 2002 (*Id.*).  The affidavit and warrant issued the same day, December 11, 2002 (Docket No. 270-2, Exhibit 1).  As such, the affidavit was not conclusory and was not so lacking as to render it unreasonable.

Although it might be argued that a reasonable officer should have known that the mere presence of drugs and a weapon does not justify a no-knock night season search,  a reasonable officer could conclude that a *combination of* drugs, weapons, and U.S. Currency could give rise to exigent circumstances.  O.R.C. § 2933.231(B)(1) states that a no-knock warrant shall issue if the affiant has "good cause to believe that there is a risk of serious physical harm to the law enforcement officers," and the issuing judicial officer agreed such risk existed (Docket No. 270-2, Exhibit 1).  The U.S.  Supreme Court has suggested that an officer's good faith would *rarely* be questioned once a detached magistrate has issued a warrant.  *Leon*, 104 S. Ct. at 3420.  Further the U.S. Supreme Court has stated that when a warrant has been issued and later found to lack probable cause, the exclusionary rule should only be applied when applying the exclusionary rule would deter police misconduct. *U.S. v. McClain*, 430 F.3d 299, 307 (6th Cir. 2005) (*citing Leon*, 104 S. Ct. at 3418).  This is not a case alleging police misconduct; nor is the affidavit so conclusory or lacking that the officer could not reasonably rely upon it.  Therefore, the good faith exception should apply and the evidence should be admitted.

*Whether the Court's failure to record the probable cause hearing pursuant to O.R.C. § 2933.221(E) renders the warrant ineffective?*

Ohio Revised Code § 2933.231(E) states:

> Any proceeding before a judge or magistrate that involves a request for a waiver of the statutory precondition for non-consensual entry shall be recorded by shorthand, by stenotype, or by any other mechanical, electronic, or video recording device. The recording of and any transcript of the recording of such a proceeding shall not be a public record for purposes of Section 149.43 of the Revised Code until the search

warrant is returned by the law enforcement officer or other authorized officer who executes it. This division shall not be construed as requiring, authorizing, or permitting, and does not require, authorize, or permit, the making available for inspection, or the copying, under Section 149.43 of the Revised Code of any confidential law enforcement investigatory record or trial preparation record, as defined in that section.

In this case, law enforcement alleges that the proceeding was taped; however, as of March 17, 2006 no record of the proceeding has been located (Docket No. 270-1, pg. 11, fn 1). Even if no recording were made as required by Ohio law, the Supreme Court of Ohio has consistently held that the exclusionary rule should not be applied absent constitutional violations, unless explicitly required by the legislature. *State v. Baker*, 621 N.E.2d 1347, (Ohio App. 1st Dist. 1993) (citing *State v. Thompson*, 514 N.E.2d 407, 415 (Ohio 1987); *Kettering v. Hollen*, 416 N.E.2d 598, 600 (Ohio 1980). See also, *State v. Allen*, 442 N.E.2d 784, 786 (Ohio1981)).

The magistrate finds that the failure to record is clearly a statutory violation of O.R.C. § 2933.231(E); however, such a violation does not trigger the exclusionary rule unless the statutory deprivation is, itself, a constitutional deprivation. Counsel did not cite and the magistrate did not find a decision finding that the deprivation of a probable cause hearing record is, in itself, a constitutional deprivation. Therefore, the violation of O.R.C. § 2933.231(E) does not make the search unreasonable and does not require the evidence to be excluded.

## *CONCLUSION*

For the foregoing reasons, the undersigned finds that the fruits of the search should be admitted pursuant to the good faith exception and accordingly recommends that the motion to suppress be overruled (Docket No. 199).


/s/ Vernelis K. Armstrong
U. S. Magistrate Judge

## NOTICE

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto has been filed.

Please be advised that, pursuant to rule 5.3(b) of the Local Rules for this District, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in United States v. Walters 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals. In Thomas v. Arn, 474 U.S. 140 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.